# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                                                               No. 1:19-cr-2618-WJ

VINCENT LUNA,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION FOR INFORMATION
## PURSUANT TO *GIGLIO V. UNITED STATES* REGARDING ALL ARRESTING
## OFFICERS AND THOSE INVOLVED IN THE SEARCH

THIS MATTER comes before the Court upon Defendant's Motion for Information Pursuant to *Giglio v. United States* Regarding All Arresting Officers and Those Involved in the Search, filed December 30, 2019 **(Doc. 25)**. Defendant moves for disclosure of impeachment information regarding at least nine law enforcement officers who were involved in his arrest and subsequent apprehension after he failed to show for his preliminary hearing. Having reviewed the parties' pleadings and applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is denied.

## BACKGROUND

Defendant is charged with being a Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. 922(g)(1); Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); and Possessing a Firearm in Furtherance of a Drug Trafficking Offense in violation of 21 U.S.C. § 924(c)(1)(A)(i). These charges arise from an encounter between law enforcement and Defendant at his residence in Cibola County on April 5,

2019. That encounter involved a large number of Cibola County Sherriff's deputies who had some role in either the initial encounter with Defendant, the fight Defendant instigated with deputies, the transportation of Defendant for medical treatment and then to the county detention center, or the execution of three search warrants on Defendant's residence and property.

Following the events of that day, Defendant was initially charged in state court with a number of offenses including distribution of a controlled substance, possession of firearms by a felon, and receiving stolen firearms and motor vehicles. Defendant was released on conditions on April 8, 2019, and a preliminary hearing was set for May 7. Defendant failed to appear at the preliminary hearing so a warrant was issued for his arrest. On July 27, he was located at a gas station, but he successfully fled from the deputies, escaping on Interstate 40 at a high rate of speed. Defendant was eventually arrested in Valencia County on July 29, having spent approximately three months as a fugitive.

Defendant seeks an order directing the Government to provide to the defense impeachment as well as exculpatory evidence pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), regarding all arresting officers and those subsequently involved in the search of Defendant's property. The requested information includes but is not limited to the following:

- Citizen complaints;
- Disciplinary investigations, actions, and reports;
- Internal affairs reports;
- Performance evaluations;
- Reprimands for off duty conduct; and
- All other material written or otherwise revealing specific acts of dishonesty or misconduct bearing on these officers' character for truthfulness as well as their propensity for engaging in unlawful activity going beyond the scope of their official duties.

Defendant intends to use the requested material in support of his pending motion to suppress **(Doc. 24)**.

**DISCUSSION**

In *Brady v. Maryland,* the Supreme Court explained that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87. In *Giglio v. United States,* the Supreme Court extended its holding in *Brady* to include evidence affecting the credibility of government witnesses. 405 U.S. at 154–55.

In *United States v. Bagley,* 473 U.S. 667, 676 (1985), the Supreme Court reaffirmed its holdings in *Brady* and *Giglio*, clarifying that within the framework of *Brady's* duty to disclose, there was no distinction between impeachment evidence and exculpatory evidence. In *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), the Supreme Court held that the prosecution also "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."

The Government contends that Defendant is not entitled to the requested *Giglio* information for a suppression hearing, because his entitlement to such information is a trial right only. The Government also notes that while Defendant seeks impeachment information on all nine law enforcement officers who had some involvement with Defendant on April 5, 2019, he is entitled to impeachment information only as to those individuals who are called as Government witnesses. *See* 18 U.S.C. § 3500(b) (Jencks Act).

**I.     Defendant's Entitlement to Discovery and the Timing of Disclosure**

In support of his motion, Defendant refers to Department of Justice ("DOJ") guidelines and policies; specifically, § 9-5.001(B) of the Justice Manual which requires the Government to seek all exculpatory and impeachment information from federal and state authorities. However,

as the Government points out, DOJ policies do not create an enforceable right for a defendant seeking discovery. *United States v. Taylor*, 608 F. Supp. 2d 1263, 1268 (D.N.M. Mar. 26, 2009) (citing cases holding that DOJ internal policies do not create substantive or procedural rights for defendants); *United States v. Wilson*, 413 F.3d 382, 389 (3d Cir. 2005) (collecting cases).

There is also no general constitutional right to discovery in a criminal case. *United States v. Hernandez-Muniz*, 170 F.3d 1007, 1011 (10th Cir. 1999) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)). The Due Process Clause "has little to say regarding the amount of discovery which the parties must be afforded." *United States v. Nevels*, 490 F.3d 800, 803 (10th Cir. 2007) (quoting *Weatherford*, 429 U.S. at 559). Rather, discovery is governed by statutory law; namely, Federal Rules of Criminal Procedure Rule 16, and in the interest of due process under *Brady* and related case law. As to this motion, the Court finds that Defendant is not entitled to disclosure of impeachment evidence before a suppression hearing because due process requires only that defendant receive evidence that is material to either guilt or punishment, and suppression hearings do not relate to guilt or punishment.

In *United States v. Ruiz,* the Supreme Court held that neither the Constitution nor *Brady* requires disclosure of impeachment evidence before a guilty plea because, among other reasons, "impeachment information is special in relation to the *fairness of a trial,* not in respect to whether a plea is *voluntary.*" 536 U.S. 622, 629-632 (2002) (emphasis in original). The Tenth Circuit has found that, in the context of a fair trial, "[s]ome limitation on disclosure delay is necessary to protect the principles articulated in *Brady v. Maryland." United States v. Burke,* 571 F.3d 1048, 1053 (10th Cir. 2009). In *Burke,* the Tenth Circuit also recognized that it would "eviscerate the purpose of the *Brady* rule and encourage gamesmanship" if the Government were allowed to "postpone disclosures to the last minute, during trial." *Id.* at 1054. The Tenth Circuit has not

4

decided specifically whether impeachment evidence should be disclosed prior to a suppression hearing but after *Ruiz,* it would seem to be more difficult for a defendant to claim that *Brady* obligates pre-hearing disclosure. *See United States v. Harmon*, 871 F. Supp. 2d 1125, 1151 (D.N.M. May 10, 2012) (Browning, J.) ("it is not likely that a prosecutor must disclose impeachment evidence before a suppression hearing in light of the Supreme Court's conclusion in *United States v. Ruiz.*"), *aff'd,* 742 F.3d 451 (10th Cir. 2014).[1]

Defendant points to no persuasive case law decided after *Ruiz* which holds that impeachment evidence must be disclosed before a suppression hearing. Instead, he relies on *United States v. Rodella*, a District of New Mexico case chastising the Government for disclosing at times "only the bare minimum that the law requires and nothing more." No. CR 14-2783 JB, 2015 WL 711931, at *39 n.12 (D.N.M. Feb. 2, 2015) (Browning, J.). But that case does not advance Defendant's position regarding the *timing* of disclosure. In fact, the court observed, as it did in *Harmon,* that "it is not likely that a prosecutor must disclose impeachment evidence before a suppression hearing in light of the Supreme Court's conclusion in *United States v. Ruiz.*" *Id.* at *19 (quoting *Harmon*, 871 F. Supp. 2d at 1151).

The few unpublished decisions by the Tenth Circuit related to this issue suggest that the reasoning in *Ruiz* would also apply to the timing of disclosure for suppression hearings. For example, in *United States v. Johnson,* without mentioning *Ruiz* or discussing whether *Brady* applies to a suppression hearing, the Tenth Circuit rejected a defendant's argument that the prosecution violated *Brady* by failing to disclose impeachment evidence before a suppression

---

[1] In *Harmon*, the court noted that courts "have split" on the issue of disclosure before a suppression hearing, but that "decisions that have found an obligation to disclose impeachment evidence before a suppression hearing predate . . . [*Ruiz*]." 871 F. Supp. 2d at 1168; *see United States v. Hykes,* No. CR 15-4299 JB, 2016 WL 1730125 (D.N.M. Apr. 11, 2016) (Browning, J.) (ordering Government to review personnel files and discloses exculpatory information, but finding that it was not required to produce information before the suppression hearing).

hearing. 117 F.3d 1429, 1997 WL 381926 at *3 (10th Cir. 1997). The court concluded that even if the evidence was impeaching, disclosure "would not establish a reasonable probability that the outcome of the suppression hearing would have been different" and also questioned whether the evidence "would have been admitted at the suppression hearing." *Id.*

Here, Defendant seeks to obtain impeachment material before a suppression hearing is held, but there is no legal authority for disclosure to be made on Defendant's timetable. Defendant has no entitlement to disclosure of impeachment evidence in advance of a suppression hearing and so the motion is denied in that regard. That said, the Government states it "fully intends to comply with its own policies regarding the inquiry for and production of impeachment information in advance of such a hearing" even though doing so exceeds constitutional requirements. Doc. 32 at 3-4. The Court will hold the Government to this representation, although it agrees with the Government that there is some question as to whether some of the requested information is in fact impeachment evidence—as the Court will consider later in the discussion.

## II.     Witnesses Relevant to Defendant's Request

The Jencks Act requires the Government to provide a defendant with statements or reports made by a Government witness after the witness has testified. *See* 18 U.S.C. § 3500(b). Jencks material differs from *Brady* material in that it covers any statement made by the Government's witness regardless of whether it is directly contradictory to his or her testimony. *United States v. Smaldone*, 544 F.2d 456, 460 (10th Cir. 1976). Thus, the Government contends that if Defendant is entitled to impeachment information under *Giglio* in advance of a suppression hearing (which the Court has decided he is not), Defendant is entitled to this information only for Government witnesses. *See United States v. Molina,* 75 F.3d 600, 602 (10th Cir. 1996) (noting that *Giglio* requires the Government to disclose to the defense evidence pertaining to the credibility of

government witnesses) (citing *Giglio,* 450 U.S. 154 (1972), *cert. denied*, 116 S. Ct. 2510 (1996); *United States v. Garcia-Martinez*, 730 F. App'x 665, 678–79 (10th Cir. 2018) (noting that "*Giglio* appl[ies] only to impeachment information relating to a government witness" and that there is no "controlling precedent" that would oblige the Government under *Brady* "to disclose information that is exculpatory—in a purely impeachment sense—with respect to a *defense* witness") (citing *United States v. Green*, 178 F.3d 1099, 1109 (10th Cir. 1999) (emphasis in original), *cert. denied,* 139 S. Ct. 465 (2018); *United States v. Embry,* 452 F. App'x 826, 834–35 (10th Cir. 2011) (noting that the Federal Rules of Evidence preclude a defendant from calling law enforcement officers to testify as witnesses for the sole purpose of impeaching him or her).

While the Government has not decided which witnesses it will call at trial, it states with certainty that it has no intention of calling every law enforcement officer who had some involvement with Defendant on April 5, 2019. Some officers were involved only tangentially in the incident and for those who were involved more substantially, duplicative testimony would obviously be unnecessary and inefficient. Accordingly, Defendant is entitled to *Giglio* material only for those law enforcement officers the Government intends to call as witnesses at trial.

**III.     Whether Defendant's Requested Information is Relevant to Impeachment**

Defendant assures the Court that the material requested from the officers' personnel files is relevant to impeachment of the officers involved, but the Government characterizes the request as little more than an attempt to burden the Government and harass its witnesses. The Court agrees with the Government that the examples provided by Defendant are not relevant to impeachment.

Defendant, as an example, offers evidence that Deputy Munk crashed into his car while parked by a gasoline pump "without regard to a possible explosion of the gas pump or other

motoring public." Doc. 25 at 7-8. Defendant also contends that evidence exists confirming that Deputy Munk was in an undercover car when he hit his car. According to the Cibola County Sheriff's Office report, attached as an exhibit to Defendant's motion, Deputy Munk did indeed strike Defendant's vehicle with his unmarked patrol unit in an attempt to prevent him from fleeing.[2] However, the Court fails to see how these facts constitute relevant impeachment information. They describe law enforcement's tactics trying to apprehend Defendant when he was a fugitive—months after the encounter giving rise to the current charges.

Defendant also points to a 1999 Domestic Violence state court complaint against Deputy Munk for battery on a household member. That case's docket sheet indicates that the case was eventually dismissed and that Deputy Munk agreed to participate in a Domestic Violence early intervention program. Doc. 25-3 (Ex. C). The Court cannot fathom what possible relevance a twenty-year-old domestic violence arrest has for impeaching Deputy Munk—whether at a suppression hearing or at trial—or how such an arrest (which did not result in a conviction) could ever be admitted at trial under the rules of evidence.

Based on these examples, the Court agrees with the Government that Defendant's objective seems to be directed at harassing and embarrassing the law enforcement officers involved in his initial arrest in this matter rather than to acquire legitimate impeachment information regarding Government witnesses. The Court reiterates that Defendant is entitled to evidence pertaining to credibility of the Government's witnesses, but he will not be permitted to conduct a bottom trawling expedition of internal police files to use for improper purposes.

---

[2] Defendant provides a DVD of the "crash" at the gas station, lasting a little over a minute. Doc. 25-1 (Ex. A). The Court watched the video several times but could not actually see a "crash." The Court will assume the "crash" occurred, although it still has little or no relevance for impeachment purposes.

**CONCLUSION**

In sum, the Court finds and concludes that while Defendant is entitled to *Giglio* material, he is entitled only to information regarding individuals the Government will call as witnesses. The Government is required to make ongoing and timely disclosure of such evidence, but it is not required to disclose such evidence in advance of a hearing on Defendant's pending motion to suppress.

The Court also finds and concludes that certain examples provided by Defendant as impeachment evidence is not impeachment evidence and reminds Defendant that *Giglio* entitles him only to evidence pertaining to credibility of Government witnesses.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Information Pursuant to *Giglio v. United States* Regarding All Arresting Officers and Those Involved in the Search **(Doc. 25)** is hereby DENIED for the reasons described in this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE